UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUCY MONTOYA ROBERTS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHARKNINJA OPERATING LLC,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lucy Montoya Roberts ("Plaintiff") brings this action on behalf of herself and all others similarly situated against SharkNinja Operating LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action against Defendant SharkNinja Operating LLC for the manufacture, distribution, and sale of SharkNinja Foodi OP300 Series Multi-Function Pressure Cookers, all of which suffered from an identical defect in design. Specifically, the "pressure-cooking lid can be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers."[1] A pressure cooker that poses such a hazard is unreasonably dangerous. This defect rendered the Products unsuitable for their principal and intended purpose.

---

[1] https://www.cpsc.gov/Recalls/2025/SharkNinja-Recalls-1-8-Million-Foodi-Multi-Function-Pressure-Cookers-Due-to-Burn-Hazard-Serious-Burn-Injuries-Reported

1

2. Defendant "has received 106 reports of burn injuries, including more than 50 reports of second- or third-degree burns to the face or body, with 26 lawsuits filed" prior to Defendant recalling the Products."[2]

3. On May 1, 2025, Defendant SharkNinja Operating LLC and the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of roughly 1,846,400 pressure cookers sold in the United States (the "Products"). Consumers were warned that the Products' "lid can be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers."[3] Further, consumers were specifically instructed to "**immediately stop using the product's pressure-cooking function**."[4] But, of course, the pressure-cooking function is the primary intended use of the Products, without which the Products are worthless.

4. In other words, this case concerns a defect that Defendant admitted renders the Products unable to be used for their intended purpose. There is no dispute that a pressure cooker that cannot be used has no intrinsic value. Indeed, Defendant has instructed consumers to stop using the Products.

5. And yet, Defendant refuses to refund customers that purchased the Products. Instead, Defendant implemented a deficient recall that allows it to *say* they are doing the right thing, when in fact the primary objective is to protect their bottom line.

6. Any requests for refunds are denied. A consumer only has one publicly announced option: to contact Defendant for a purported replacement lid.

7. Further, a refusal to offer refunds guarantees that customers who have lost faith in Defendant's products and no longer want to use a product that has caused more than 100 burn injuries and dozens of personal injury lawsuits get nothing. This approach benefits Defendant by minimizing the cost and burden of the recall.

---

[2] *Id*.
[3] *Id*.
[4] *Id*.

8.  Plaintiff is filing this class action lawsuit to seek all available relief to consumers, to raise awareness that Defendant's Products are a hazard, and to "encourage companies to take greater care in avoiding the production [and sale] of hazardous products in the first place." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661 at *10 (C.D. Cal. Oct. 9, 2019) (quoting *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008)).

## PARTIES

9.  Plaintiff Lucy Montoya Roberts is domiciled in Yorba Linda, California and may be referred to in this Complaint as the "California Plaintiff." Plaintiff purchased one of Defendant's Products subject to the recall, a 6.5 Quart OP305 model, new from a Target near her home within the class period. A picture of the side label of her unit is shown below:



10. Plaintiff experienced the defect at issue in this case, and the incident caused minor property damage. Due to the recall, Plaintiff has stopped using the Product and it provides her no value. At the time of purchase, there were no representations that disclosed or suggested in any way that the Product contained the Defect, which was material to Plaintiff and became a basis of the bargain. If the Product's labeling or packaging had disclosed the Defect, then

Plaintiff would not have purchased the Product, or would not have purchased the Products on the same terms.

11. Defendant SharkNinja Operating LLC is a Delaware limited liability corporation with its principal place of business and headquarters located at 89 A Street, Suite 100, Needham, MA 02494. Defendant shipped the Products herein nationwide, including to California.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

13. This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, Defendant has its principal place of business and headquarters in this District, and Defendant otherwise intentionally availed itself of the laws of this State through the marketing of the Product at issue in Massachusetts to consumers in Massachusetts and through sales of the Product in Massachusetts to consumers in Massachusetts, so as to render the exercise of jurisdiction by this Court consistent with traditional notions of fair play and substantial justice. A substantial portion of the events giving rise to the claims alleged here occurred in this State.

14. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and because Defendant engages in continuous and systematic business activities within this District..

## FACTUAL ALLEGATIONS

15. **Product at Issue**: The Products in question are all Ninja Foodi OP300 Series Multi-Function Pressure Cookers at issue in the May 1, 2025 CPSC Recall. As stated on the CPSC recall page, the "cookers have functions that include pressure cooking and air frying. They were sold in black and have a 6.5-quart capacity. 'Ninja' is printed on the front of each unit and on the product label. Model numbers OP300, OP301, OP301A, OP302, OP302BRN,

OP302HCN, OP302HAQ, OP302HW, OP302HB, OP305, OP305CO and OP350CO are included in this recall and are printed on a label on the side of the cooker. An additional code following the model number is not part of that model designation. For example, a unit labeled 'OP301 I07' is a model OP301 unit. Any OP300 series replacement pressure cooker lids purchased as an additional part are also included in this recall."

16. The Products were sold nationwide, including at Walmart, Costco, Sam's Club, Amazon and Target stores, and online at www.Ninjakitchen.com, www.walmart.com, www.costco.com, www.samsclub.com, www.amazon.com and www.target.com from January 2019 through March 2025 for about $200.

17. **Defect at Issue:** As stated by Defendant: "The pressure-cooking lid can be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers." The Defect affects all of the Products at issue. Defendant and the CPSC have stated that "[c]onsumers should immediately stop using the product's pressure-cooking function."

18. **Relevant Time Period:** All of the omissions and misrepresentations at issue here were uniformly and consistently made at all times while the Products were sold between January 2019 through March 2025. There have been no material changes to the product packaging or other consumer facing materials during the relevant period.

19. **The Omissions and Misrepresentations:** Defendant sold the Products as pressure cookers. However, Defendant failed to disclose that the "pressure-cooking lid can be opened during use, causing hot contents to escape, posing a risk of burn injuries to consumers."

20. The omission pertains to an unreasonable safety hazard that reasonable consumers consider to be material. Indeed, Defendant has received reports of "has received 106 reports of burn injuries, including more than 50 reports of second- or third-degree burns to the face or body" due to the Defect.

21. The omissions occurred in all places a customer would have been reasonably likely to see a disclosure if one had been made, including the product packaging and the product page on Defendant's website.

22.     Plaintiff and class members would not have bought the Products, or would not have bought them on the same terms, if the Defect had been disclosed. The materiality of the Defect also is demonstrated by the existence of the recall.

23.     At the time of purchase, Plaintiff and class members did not know and did not have reason to know that the Products were defective. Defendant had exclusive knowledge of that fact.

24.     Defendant made partial representations to Plaintiff and class members, while suppressing the safety defect. Specifically, by displaying the Products and describing its functions and parts, the Products' packaging and web pages implied that they were suitable and safe to use as pressure cookers, without disclosing that they had a critical safety-related defect related to the Products.

25.     **Defendant's Pre-sale Knowledge of the Defect**:  Defendant was aware of the defect at the time of sale.  Indeed, it took more than 100 consumer reports of burn injuries, and 26 personal injury lawsuits over the span of many years, before Defendant finally issued the recall.

26.     Before the products were first launched, Defendant knew about the defect as a result of pre-release testing.

27.     After launch, Defendant monitored a variety of sources of information to detect signs of defects. These sources of information include warranty claim data, customer complaints to Defendant, replacement part data, field reports, and CPSC correspondence. Defendant knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Defendant made projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

28.     The customer complaints about the Products put Defendant on notice of the defect and contributed to their pre-sale knowledge of the defect, because the defect is the same or substantially similar in all material respects.  The number of complaints about the Products was unusually high relative to the total number of products sold.  The fact that so many owners made

similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Products. The reports and complaints from customers were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the Products were experiencing unusually high levels of complaints about the defect. And yet, Defendant waited until it received **106 formal reports of burn injuries and 26 lawsuits before instituting the recall**.

29. Defendant also monitored and would have known about consumer complaints to the CPSC. When a consumer posts a complaint on the CPSC website, all of the relevant information provided to the CPSC is automatically sent via email to the manufacturer and retailers. Monitoring complaints to the CPSC is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Defendant adhere to that practice.

30. For instance, a February 21, 2020 report on CPSC's website shows that a consumer reported that she received one of the recalled Products for her birthday on April 26, 2019, purchased from Target. The model number was OP301. The unit was 6.5 quart. In other words, there is no question that it was one of the affected Products. The consumer reported that "the unit exploded and sprayed the hot contents all over my abdomen, causing second degree burns over most of my abdomen." The consumer went on to state:

> Per the instruction manual, I p[l]aced the ingredients in the pot, secured the pressure cooking lid to lock, and turned the steam valve to the "seal" position. I turned on the pressure cooking option and watched as the unit displayed the loading screen indicating the cooker was building pressure and heat. Steam started to escape the machine, yet everything was in the locked and sealed position. Concerned, I turned the valve to vent to release all of the pressure and steam from the machine. After the steam stopped coming out, I powered off the machine by selecting the power button and unplugged the machine. [I] then went to retrieve the owner's manual. While standing in front of the machine reading the owner's manual, the lid exploded off like a bomb sending hot liquid all over my abdomen and kitchen. By pure dumb luck, my children were not in the kitchen at the time of the explosion and were not harmed. This item had been used

successfully three times prior this incident. I have been left with permanent heat sensitivity and scarring all over lower abdomen.[5]

31.  Another consumer, in a July 25, 2024 report to the CPSC, described a very similar experience for one of the recalled Products: "The lead exploded with the hot broth sprinkled around burned my whole abdominal and partially my both tights with the 2d degrees burn."[6]

32.  Based on the CPSC's recall page for the Products, it appears that Defendant got 106 such reports of burn injuries prior to recalling the Products. Surely, for every burn injury, Defendant received dozens or hundreds of other reports with less severe harm.

33.  **No Adequate Remedy At Law:** Plaintiff and members of the Class are entitled to equitable relief because no adequate remedy at law exists.

34.  Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.

35.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fail to sufficiently adduce evidence to support an award of damages.

36.  Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff seeks non-restitutionary disgorgement of profits in connection with his unjust enrichment claim.

37.  Legal claims for damages are not equally certain as restitution because equitable claims entail few elements.

---

[5] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1955848
[6] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4834460

38.	In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

39.	**The Recall Does Not Render This Lawsuit Moot:** The recall does not render this lawsuit moot because it does not provide all of the same relief available in this lawsuit.

40.	No refunds are provided.

41.	The CLRA provides that "in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Civ. Code § 1780(a)(1). That is more than the provided for under the recall.

42.	The recall was only briefly publicized and in a very limited manner. Therefore, on information and belief, many eligible class members remain unaware of it, and the response rate has been low. The amount and reach of the publicity concerning the notice of recall was not comparable to the typical notice provided in a class action.

43.	**Tolling:** The Defect at issue was latent, and Plaintiff and putative class members had no way to discover the Defect at the time of sale. Plaintiff did not discover the existence or extent of the Defect until learning of the CPSC recall, and could not have discovered it with reasonable due diligence. Defendant had sole knowledge of the Defect, and yet actively and intentionally concealed it from the public.

## CLASS ALLEGATIONS

44.	*Class Definition*: Plaintiff brings this action on behalf all people the following classes and subclasses:

45.	<u>Multi-State Implied Warranty Class</u>: All persons who purchased a subject Product for personal, family, or household use: (1) in Alaska, Arkansas, California, Delaware, District of Columbia, Hawaii, Indiana, Kansas, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Utah, Virginia, or Wyoming within the applicable statute of limitations; or (2) in Colorado or Massachusetts within the applicable statute of limitations.

46. <u>Multi-State Consumer Protection Class</u>: All persons who purchased a subject Product for personal, family, or household use: (1) in the states of Michigan, Minnesota, or New Jersey within the applicable statute of limitations; (2) in the state Missouri within the applicable statute of limitations; (3) in the states of California, Florida, Massachusetts, or Washington within the applicable statute of limitations; (4) in the states of Illinois and New York within the applicable statute of limitations.

47. <u>California class</u>: all people who purchased or leased a subject Products in California.

48. Each of the above class definitions is a placeholder that "may be altered or amended before final judgment." Fed. Civ. P. 23(c)(1)(C). Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.

49. Excluded from the putative classes are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family. Also excluded are any claims for personal injury.

50. **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, each Class or Subclass includes thousands of consumers. The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

51. **Commonality and Predominance.** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common legal and factual questions include, but are not limited to:

10

       (a)      Whether Defendant knew or should have known of the defect at issue in this case, and if so, when they discovered the defect;

       (b)      Whether knowledge of the defect at issue in this case would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

       (c)      Whether Defendant failed to disclose and concealed the existence of the defect from potential customers;

       (d)      Whether Defendant's conduct, as alleged herein, violates the consumer protection laws asserted here;

52.    **Typicality.** Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that the products at issue here can be dangerous.

53.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that are antagonistic to those of the Class. Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

54.    **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

55.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

## COUNT I
**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

56. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

57. Plaintiff brings this cause of action individually and on behalf all other class members.

58. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

59. Defendant acted with knowledge and intent.

60. Plaintiff alleges a claim under all three prongs of the UCL.

61. As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

62. Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

63. Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

64. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Class have suffered out-of-pocket losses.

65. Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

66. Plaintiff seeks all relief available under the UCL.

## COUNT II
### Violations of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

67. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

68. Plaintiff brings this cause of action individually and on behalf all other class members.

69. Defendant is a "person" as defined by California Civil Code § 1761(c).

70. Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

71. For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

72. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

73. Defendant acted with knowledge and intent.

74. Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

75. With respect to restitution under the CLRA claim, Plaintiff allege in the alternative that they lack an adequate remedy at law for the reasons already alleged above.

76. As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

77. Plaintiff seeks all relief available under this cause of action, except damages. Plaintiff may amend this claim at a later time to add a damages claim.

## COUNT III
### Violation of Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*

78. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

79. Plaintiff brings this cause of action individually and on behalf all other class

members.

80. The Products are "consumer goods" and Plaintiff and class members are "buyers" within the meaning of Cal. Civ. Code § 1791.

81. Defendant is a "manufacturer," "distributor," and/or "retail seller" under Cal. Civ. Code § 1791.

82. The implied warranty of merchantability included with the sale of each Product means that Defendant warranted that each Product (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Product would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

83. The Products would not pass without objection in the trade because they contain the above-described defect, which also makes them unfit for the ordinary purpose for which they would be used.

84. The products are not adequately labeled because their labeling fails to disclose the defect and does not advise class members of the existence of the danger prior to experiencing failure firsthand.

85. The Products were not sold on an "as is" or "with all faults" basis.

86. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

87. Defendant's actions have deprived Plaintiff and class members of the benefit of their bargains and have caused the Products to be worth less than what Plaintiff and other class members paid.

88. As a direct and proximate result of the breach of implied warranty, class members received goods whose condition substantially impairs their value. Class members have been damaged by the diminished value of their Products.

89. Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and class members are entitled to damages and other legal and equitable relief, including, at their election, the right to revoke acceptance of the Products or the overpayment or diminution in value of their products. They are also entitled to all incidental and consequential damages resulting from the breach, as well as reasonable attorneys' fees and costs.

90. Plaintiff seeks all relief available under this cause of action.

## COUNT IV
## Breach of Implied Warranty

91. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

92. Plaintiff brings this cause of action individually and on behalf all other class members.

93. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the products would be used; and conformed to the promises or affirmations of fact made on the container or label.

94. Defendant breached its warranty implied because the products could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue; and they are unfit for their ordinary purpose. As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

95. Plaintiff and Members of the Classes purchased the products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

96. The products were defective when it left the exclusive control of Defendant.

97. Plaintiff and class members did not receive the goods as warranted.

98. The Products were not sold on an "as is" or "with all faults" basis.

99. Any purported disclaimer of implied warranties was ineffective because it was not conspicuous and not made available to the purchaser before the sale of the product. Instead, if a disclaimer was made at all, it was buried in an owner's manual, which was tucked away in the product packaging and not made available until after purchase.

100. Plaintiff purchased her product from Target. Target is an authorized dealer of the products. Plaintiff and class members were intended third-party beneficiaries of a contract between Target and Defendant because Target was not the intended end-user of the product. Plaintiff class members were the intended end-users of the product, and it was foreseeable that they would be harmed by any hazardous defects in the products.

101. Defendant's warranties are intended to benefit the consumer, not retailers like Target.

102. Defendant was aware of remote customers' requirements that products work safely and was aware that remote customers generally expected the product to meet minimum standards.

103. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

104. Plaintiff seeks all relief available under this cause of action.

## COUNT V
### Unjust Enrichment

105. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

106. Plaintiff brings this cause of action individually and on behalf all other class members.

107. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

108. The unjust enrichment claims are premised on Defendant's pre-sale activities and are unrelated to their post-sale obligations to provide repairs.

109. Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

110. Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

111. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the products were dangerous. This caused injuries to Plaintiff and class members because they would not have purchased the products or would have paid less for them if the true facts concerning the products had been known.

112. Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the products.

113. Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

114. Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

115. As a direct and proximate result of Defendant's actions, Plaintiff and class members have suffered in an amount to be proven at trial.

116. Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

117. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representatives of those classes;

b. For an order declaring Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d. For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: May 14, 2025                    Respectfully submitted,

**SMITH KRIVOSHEY, P.C.**

By: */s/ Joel D. Smith*
        Joel D. Smith

Joel D. Smith (BBO 712418)
867 Boylston Street, 5th Floor #1520
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

Yeremey O. Krivoshey (Cal. SBN 295032)
(*pro hac vice* motion forthcoming)
SMITH KRIVOSHEY, PC
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiff and the proposed Classes*

**CLRA Venue Declaration, Civil Code § 1780(c)**

I, Joel D. Smith, declare as follows:

1. I have personal knowledge to the facts stated herein and, if called upon to do so, could competently testify hereto.

2. I am the attorney for Plaintiff in the above-captioned action.

3. I submit this declaration in support of the Class Action Complaint, which is based in part on violations of the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*.

4. The Class Action Complaint has been filed in the proper place for trial of this action.

5. It is my understanding that Defendant regularly transacts business in this District, and is headquartered in this District.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on May 14, 2025 in Danielson, Connecticut.

By: /s/ Joel D. Smith
Joel D. Smith